**FILED**
CLERK, U.S. DISTRICT COURT

**APRIL 24 2020**

CENTRAL DISTRICT OF CALIFORNIA
BY: ___vdr___ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

INMATE # BL3279

WILLIAM JAMES MATTHEW WALLACE, II,

PLAINTIFF(S)

v.

LOS ANGELES SHERIFF ALEX VILLANUEVA, et al.,

DEFENDANT(S)

CASE NUMBER

2:19-cv-06128-FMO (GJS)

ORDER RE REQUEST TO PROCEED WITHOUT
PREPAYMENT OF FILING FEES

JS-6

**IT IS ORDERED** that the Request to Proceed Without Prepayment of Filing Fees is hereby GRANTED.

**IT IS FURTHER ORDERED** that, in accordance with 28 U.S.C. § 1915, the prisoner-plaintiff owes the Court the total filing fee of $350.00. An initial partial filing fee of $ _____ must be paid within thirty (30) days of the date this order is filed. Failure to remit the initial partial filing fee may result in dismissal of the case. Thereafter, monthly payments shall be forwarded to the Court in accordance with 28 U.S.C. § 1915(b)(2).

_____
Date

_____
United States Magistrate Judge

**IT IS RECOMMENDED** that the Request to Proceed Without Prepayment of Filing Fees be **DENIED** for the following reason(s):

☐ Inadequate showing of indigency.
☐ Failure to authorize disbursements from prison trust account to pay the filing fees.
☐ Failure to provide certified copy of trust fund statement for the last six (6) months.
☐ District Court lacks jurisdiction.
☐ Other _____
_____

☒ Frivolous, malicious, or fails to state a claim upon which relief may be granted.
☐ Seeks monetary relief from a defendant immune from such relief.
☒ Leave to amend would be futile.
☒ This denial may constitute a strike under the "Three Strikes" provision governing the filing of prisoner suits. *See O'Neal v. Price*, 531 F.3d 1146, 1153 (9th Cir. 2008).

Comments:
See Attachment

April 22, 2020
_____
Date

_____
United States Magistrate Judge

**IT IS ORDERED** that the Request to Proceed Without Prepayment of Filing Fees is:

☐ **GRANTED. IT IS FURTHER ORDERED** that, in accordance with 28 U.S.C. § 1915, the prisoner-plaintiff owes the Court the total filing fee of $350.00. An initial partial filing fee of $ _____ must be paid within thirty (30) days of the date this order is filed. Failure to remit the initial partial filing fee may result in dismissal of the case. Thereafter, monthly payments shall be forwarded to the Court in accordance with 28 U.S.C. § 1915(b)(2).

☐ **DENIED.** Plaintiff SHALL PAY THE FILING FEES IN FULL within 30 days or this case will be dismissed.

☒ **DENIED**, and this case is hereby DISMISSED immediately.

☐ **DENIED, with leave to amend within 30 days.** Plaintiff may re-submit the IFP application and Complaint to this Court, if submitted with the Certified Trust Account Statement and Disbursement Authorization. Plaintiff shall utilize the same case number. If plaintiff fails to submit the required documents within 30 days, this case shall be DISMISSED.

April 24, 2020
_____
Date

/s/ Fernando M. Olguin
_____
United States District Judge

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JAMES MATTHEW WALLACE, II, | Case No. 2:19-cv-06128-FMO (GJS) |
| Plaintiff | **ATTACHMENT TO RECOMMENDATION ON APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FILING FEES** |
| v. | |
| LOS ANGELES SHERIFF ALEX VILLANUEVA, et al., | |
| Defendants. | |

On July 16, 2019, Plaintiff filed a complaint under 42 U.S.C. § 1983 against three Defendants:  Alex Villanueva, the Sheriff of the Los Angeles County Sheriff's Department (LASD) ("Sheriff Villanueva"); the County of Los Angeles ("County"); and the City of Los Angeles ("City").  [Dkt. 1, "Complaint."]  The Complaint stemmed from various events and circumstances that took place and/or existed at the LASD's Twin Towers Correctional Facility ("TTCF") between April 28, 2019, and June 7, 2019, while Plaintiff was incarcerated there.  Plaintiff sought leave to proceed without prepayment of the filing fee.  As a result, under 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c)(1), the Court was required to screen the Complaint to determine whether it must be dismissed as frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking relief against a defendant who is immune from suit.

| | |
|---|---|
| 1 | When screening was completed, on September 6, 2019, United States District |
| 2 | Judge Fernando M. Olguin denied Plaintiff's request to proceed without prepayment |
| 3 | of the filing fee [Dkt. 8, "September 6 Order"].  The September 6 Order found that |
| 4 | the Complaint:  failed to state any cognizable claim against Sheriff Villanueva, as it |
| 5 | contained only conclusory allegations seeking to impose respondeat superior |
| 6 | liability; improperly sued the City for matters alleged to have taken place at a |
| 7 | County entity; and failed to state any cognizable basis for holding the County liable |
| 8 | consistently with *Monell v. Dep't of Social Services*, 436 U.S. 658, 693-95 (1978). |
| 9 | The September 6 Order also noted that Plaintiff had failed to submit the certified |
| 10 | copy of Plaintiff's trust fund statement for the last six months required by 28 U.S.C. |
| 11 | § 1915(a)(2).  The September 6 Order granted Plaintiff leave to file a First Amended |
| 12 | Complaint that corrected the identified defects and cautioned him that the First |
| 13 | Amended Complaint must be complete in itself. |
| 14 | On October 11, 2019, Plaintiff filed his First Amended Complaint, which |
| 15 | added a large number of individual Defendants [Dkt. 19, "FAC"].   On November 4, |
| 16 | 2019, Plaintiff submitted an uncertified copy of his inmate trust account statement |
| 17 | covering the period from April 1, 2019, through October 17, 2019 [Dkt. 22].  As |
| 18 | before, screening of the FAC was required by 28 U.S.C. § 1915A and 42 U.S.C. § |
| 19 | 1997e(c)(1).  On December 10, 2019, District Judge Olguin again denied leave to |
| 20 | proceed without prepayment of the filing fee, although he granted Plaintiff one *final* |
| 21 | chance to amend.  [Dkt. 24, "December 10 Order."]  The December 10 Order found, |
| 22 | *inter alia*, that the FAC:  was substantially defective procedurally and, as a result, |
| 23 | did not state any claim against the Defendants; continued to fail to state a cognizable |
| 24 | claim against Sheriff Villanueva; again improperly sought to hold the City liable for |
| 25 | matters that occurred at a County entity, despite Petitioner having been warned that |
| 26 | he could not do so; and again failed to state any cognizable claim against the County |
| 27 | or any cognizable official capacity claims.  The December 10 Order directed that in |
| 28 | any SAC filed: Plaintiff could not re-name Sheriff Villanueva, the City, or the |

County as Defendants; and the only permissible claims that could be included were the individual capacity claims against the individuals named as Defendants 3-12 in the FAC. The December 10 Order further cautioned Plaintiff that if the Second Amended Complaint did not comply with the December 10 Order, it might be rejected and/or the case could be dismissed under Fed. R. Civ. P. 41(b).

On December 30, 2019, Plaintiff filed his Second Amended Complaint. [Dkt. 29, "SAC."] The SAC alleges four Claims against 15 Defendants.[1] For the reasons set forth below, the Court recommends that leave to proceed without prepayment of the filing fee be denied, without leave to amend, and that this action be dismissed.

## GOVERNING STANDARD

In screening a pro se civil rights complaint, the Court must construe its allegations liberally and must afford the plaintiff the benefit of any doubt. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). The standard applicable on screening is the standard for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id.*

The complaint need not contain detailed factual allegations, but must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint does not meet the pleading standard if it contains merely "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

---

[1]    Sixteen Defendants are listed but one of them (Deputy Hinton) is named twice.

1       The Supreme Court has described a two-pronged approach for reviewing a

2   possible failure to state a claim.  *Iqbal*, 556 U.S. at 679; *see also Moss v. U.S. Secret*

3   *Service*, 572 F. 3d 962, 970-71  (9th Cir. 2009).  First, the Court may decline to give

4   the presumption of truth to any legal conclusions couched as factual allegations or

5   mere conclusory statements asserted in support of "[t]hreadbare recitals of the

6   elements of a cause of action."  *Iqbal*, 556 U.S. at 678-79.  Legal conclusions "must

7   be supported by factual allegations." *Id.* at 679.  Second, the Court presumes the

8   truth of any remaining "well-pleaded factual allegations," and determines whether

9   these factual allegations and reasonable inferences from them plausibly support a

10  claim for relief. *Id.*; *see also Moss*, 572 F.3d at 970-71.

11      If a complaint is to be dismissed, "[u]nder Ninth Circuit case law, district

12  courts are only required to grant leave to amend if a complaint can possibly be

13  saved.  Courts are not required to grant leave to amend if a complaint lacks merit

14  entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).  Leave to amend is

15  not appropriate, even given the liberal pleading standard for *pro se* litigants, when

16  "the pleading 'could not possibly be cured by the allegation of other facts.'"

17  *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation omitted).

18

19                      **DISCUSSION**

20  I.   **The SAC Violates The December 10 Order.**

21      As noted above, the December 10 Order expressly directed that certain parties

22  and claims could not be renamed and realleged in the SAC, and further directed that

23  no additional defendants could be added.  The December 10 Order cautioned

24  Plaintiff that noncompliance could result in the dismissal of this action.

25      In addition, the December 10 Order directed Plaintiff to comply with Rule 8

26  and 10 of the Federal Rules of Civil Procedure in any SAC he might file, given the

27  FAC's egregious failure to do so.  The December 10 Order directed:

28              Rule 10 of the Federal Rules of Civil Procedure

requires:  a complaint to set forth the plaintiff's claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances; and that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought."  Further, Rule 8(d)(1) requires that each allegation be "simple, concise, and direct."

. . . .

If Plaintiff wishes to proceed in this case, he must file a Second Amended Complaint that sets forth the following under separate headings for each claim:  (1) Plaintiff's legal theory (for example, a claim for violation of the Eight Amendment's prohibition on cruel and unusual punishment); (2) together in one paragraph, the Defendants against whom the particular claim is brought; and (3) the factual allegations—Defendant by Defendant—that support the particular claim against each particular Defendant.  To the extent possible, claims arising out of separate incidents should be contained in separately-labelled claims. Fed. R. Civ. P. 10(b).  If Plaintiff believes that an exhibit supports his factual allegations, he may attach it to the Second Amended Complaint and cross-reference it, but the mere attaching of any such document cannot serve as a replacement for the required factual allegations stating a claim for relief that is plausible on its face.  In addition, any Second Amended Complaint filed by Plaintiff must contain a prayer for relief in compliance with Fed. R. Civ. P. 8(a)(3).

Plaintiff has failed to heed the above-quoted December 10 Order.  The four Claims alleged in the SAC lack numbered paragraphs and are rambling and lengthy. The SAC fails entirely to indicate against whom each Claim is brought, leaving the Court to have to guess which Defendants are being sued under which Claim and under which theory(ies) of liability.

In addition, in direct violation of the December 10 Order, the SAC again names Sheriff Villanueva and the County as Defendants, even though Plaintiff was

1    clearly told he could not do so.  In direct violation of the December 10 Order and

2    Rule 15(a)(2) of the Federal Rules of Civil Procedure, the SAC adds four new

3    Defendants and a new claim, even though, again, Plaintiff was told not to do so.

4    The SAC repleads official capacity claims against seven previous defendants, as

5    well as against three of the improperly-named new Defendants, once again, in direct

6    disregard of the December 10 Order.

7         Plaintiff was warned that violating the December 10 Order could result in the

8    dismissal.  While Plaintiff's violation of the December 10 Order is not the sole

9    reason for this Court's recommendation that leave to proceed without prepayment

10   be denied, it is an additional factor warranting dismissal of this case.

11        Given the express terms of District Judge Olguin's December 10 Order,

12   Plaintiff's violation of that Order, and his failure to obtain leave under Rule 15(a)(2)

13   to add new Defendants, the Court will not consider the allegations directed to, and

14   claims apparently made against, the following Defendants:  Sheriff Villanueva, the

15   County,[2] Deputy Hinton, Sergeant Brackus, and LC/MC USC Hospital (unknown)

16   Los Angeles; and the official capacity claims brought against Deputy Brice, Deputy

17   Ruiz, Deputy Smilor, Sergeant Webb, Sergeant Marquez, Deputy Boling, and

18   Deputy Franks.  The Court now will consider each of the four Claims alleged with

19   respect to the remaining Defendants, although as noted above, its ability to do so is

20   hampered by the SAC's failings, including Plaintiff's failure to identify which

21   Defendants are being sued in connection with which Claim(s).

22

23

24   _____

     [2]     The Court notes that, with respect to the County and Sheriff Villanueva, the SAC

25   continues to suffer from the same inherent defects that existed in the original and First Amended
     Complaints and which led to the December 10 Order's bar on re-naming them as Defendants.

26   Plaintiff continues to seek to hold Sheriff Villanueva liable based solely on inadequate respondeat
     superior allegations and continues to fail to allege a viable basis for *Monell* liability on the part of

27   the County.  Given Plaintiff's inability to correct these fundamental defects, the Court must
     assume he cannot do so, and thus, leave to amend to given him a <u>fourth</u> shot against these two

28   Defendants would be inappropriate.

II.   **Claim I**

Claim I is labeled "ADA Process" at the outset and is based on: a shower that is alleged not to comply with the ADA, because it lacks a barrier to adequately prevent water from going onto the floor; the failure to conduct routine maintenance on Plaintiff's wheelchair; and the removal of the laces on Plaintiff's Nike brand "orthopedic shoes" and then the removal of the shoes themselves. Claim I also appears to plead a second and separate Section 1983/Eighth Amendment claim premised on allegations that, on two occasions, Plaintiff was not allowed to join in the pill line, because he was not wearing pants (and instead had a blanket on his lap), and thereby was deprived of unspecified medication.[3]  Both claims alleged within Claim I suffer from defects.

A.   **ADA Claim**

With respect to the ADA claim, Plaintiff did not seek leave under Rule 15(a)(2) to add a new claim raising ADA issues. But regardless of that defect, this claim is not cognizable for several reasons. As a threshold matter, the ADA claim is brought only against individuals in their individual capacities. It is unclear whether Plaintiff purports to bring his claim directly under Title II of the ADA[4] or as a Section 1983 claim to vindicate rights created by the ADA. If the latter, the claim is not cognizable, because a plaintiff may not sue a state official under Section 1983 for violations of the ADA. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that Title II's remedial scheme is the exclusive means by which a plaintiff

---

[3]      The SAC also includes several pages of rambling allegations at the end of Claim I about events that took place at a different facility (the Men's Central Jail, or "MCJ") after Plaintiff was transferred there on November 2, 2019. The SAC, however, does not include any Defendant(s) to whom these allegations can be construed to relate. Accordingly, they do not state any basis for relief and will not be considered further.

[4]      Title II of the ADA applies to inmates within state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

1    can vindicate his Title II ADA rights).

2         To the extent that Claim I is brought directly under the ADA, the only proper

3    defendant is the correctional institution or an individual officer of that institution in

4    his or her official capacity. *Vinson*, 288 F.3d at 1156; *see also Stewart v. Unknown*

5    *Parties*, 483 Fed. Appx. 374, 374 (9th Cir. 2012); *Garcia v. S.U.N.Y. Health Scis.*

6    *Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Thus, Plaintiff's individual

7    capacity claims against the Defendants are not cognizable for purposes of the ADA.

8    As noted earlier, the December 10 Order barred Plaintiff from including the County

9    (under whom TTCF is operated) as a Defendant in the SAC and from pleading

10   official capacity claims against the individual Defendants in the SAC. At the time

11   of the December 10 Order, Plaintiff had not raised an ADA claim. Having reviewed

12   the SAC carefully, the Court is persuaded that revisiting that Order for purposes of

13   allowing Plaintiff to allege a new ADA official capacity claim against the County

14   and one or more of the individual Defendants is not warranted for the following

15   reasons.

16        First, in February 2020, and again in March 2020, Plaintiff was transferred

17   from a County institution to State of California correctional institutions and, thus, no

18   longer is at TTCF or MCJ. He does not allege any reason to believe he will be

19   returned to either County institution and subjected to the conditions he claims

20   violated the ADA. [Dkt. 33, 39.] As a result, any injunctive relief he seeks pursuant

21   to his ADA claim, as well as pursuant to all of his Section 1983 claims, has been

22   mooted. *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Alexander v. Nevada*

23   *Dep't of Corrections*, No. 3:15-cv-00213-MMD-VPC, 2017 WL 1084519, at *2 (D.

24   Nev. March 22, 2017) (prisoner's transfer to another correctional institution meant

25   that "his standing for injunctive relief has vanished and his [ADA] claim is moot");

26   *Tabb v. Quinn*, No. C06-5111 RBL/KLS, 2007 WL 1430104, at *8 (W.D. Wa. May

27   11, 2007) (prisoner's release from prison rendered his ADA claims for injunctive

28   relief moot).

Second, while it is unclear that Plaintiff actually seeks damages in connection with his ADA claim, he has not alleged any basis for the same.  For the purposes of an ADA claim for monetary damages, a plaintiff must allege facts sufficient to indicate intentional discrimination.  *See T.B. ex rel. Brenneise v. San Diego Unified School Dist.*, 806 F.3d 451, 467 (9th Cir. 2015).  In the Ninth Circuit, the test for intentional discrimination is a deliberate indifference standard, requiring "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001) (citation omitted); *see also Lovell v*. Chandler, 303 F.3d 1039, 1056 (9th Cir. 2002) ("compensatory damages are not available under Title II … absent a showing of discriminatory intent").

Plaintiff's ADA claim is based on (1) an allegedly noncompliant shower, (2) the failure to conduct routine maintenance on his wheelchair, and (3) the removal of the laces on Plaintiff's Nike brand "orthopedic shoes" and then the removal of the shoes themselves  As to (1) and (2), nothing in the SAC, even if proven, could establish deliberate indifference.  With respect to (1), Plaintiff alleges that Deputy Franks had attempted to mitigate any water leakage issues by providing materials to be used as a barrier and that, subsequently, Deputies Boling and Merino measured the shower and Boling said that he would have a wall fabricated to prevent water from spilling out as well as install an additional shower rail.  Under these circumstances, no deliberate indifference could be found.  With respect to (2), Plaintiff does not allege that his wheelchair was non-operable in any respect or was on the verge of the same, only that he was told by Deputy Boling that TTCF would not perform routine maintenance in response to his demand.  Plaintiff was at TTCF temporarily and was headed to a State prison, and he does not allege that he would have been unable to obtain such routine maintenance once there, if it were to become needed.  Again, deliberate indifference could not be found under these circumstances, as no harm to a federally protected right was apparent.

1    As to (3), the shoe issue, Plaintiff alleges, in essence, a denial of proper

2    medical care and treatment, contending that his Nike shoes were medically

3    necessary and, thus, depriving him of them violated the ADA.  Such a claim,

4    however, is not cognizable under the ADA.  *See Simmons v. Navajo County*, 609

5    F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of

6    disability, not inadequate treatment for disability."), overruled in part on a different

7    ground by *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en

8    banc); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) ("the Act would

9    not be violated by a prison's simply failing to attend to the medical needs of its

10   disabled prisoners. . . . The ADA does not create a remedy for medical

11   malpractice.").  Even when a prisoner alleges that he was discriminatorily denied

12   medical treatment because of his disability, this is not cognizable under the ADA,

13   because "he only needed the treatment because he was disabled," and thus, his

14   disability is "inextricably linked" to the condition to be treated and he does not

15   satisfy the "otherwise qualified"  requirement for stating an ADA claim.  *O'Guinn v.*

16   *Nevada Dep't of Corrections*, 468 Fed. Appx. 651, 653 (9th Cir. 2012) (concluding

17   that the "key elements of an ADA . . . claim cannot be reconciled with medical

18   treatment decisions for the underlying disability").

19       The SAC alleges that unspecified Defendants – by initially removing the laces

20   on his Nike shoes and later taking the shoes away to store with his property – did

21   not provide him with proper care for the disability that led a doctor earlier to order

22   the use of the Nike "orthopedic shoes."  Even if proven, these allegations allege

23   impaired medical treatment, not discrimination "by reason of" disability, as is

24   required to state a cognizable ADA claim.[5]  *See* 42 U.S.C. § 12132; *Lovell*, 303 F.

25   _____

26   [5]    It is significant to note that while Plaintiff waxes on about being deprived of shoes, he also
makes clear that he actually is complaining about being deprived of his shoes of choice.  [See

27   Complaint at ECF #659: alleging that Plaintiff was offered black Crocs as a substitute but these
were "not suitable" in his opinion.]  In short, this was not a total deprivation of medical care but

28   the provision of an alternative that Plaintiff believed was inadequate

3d at 1052; *see also Mitchell v. Grounds*, No. C 11-03012 EJD (PR), 2012 WL
4120550, at *3 (N.D. Cal. Sept. 19, 2012) (when plaintiff claimed that due to
gunshot injury, he needed a lower bunk and that defendants' denial of a chrono for
the same violated the ADA:  "Here, Plaintiff claims that Defendants unlawfully
denied his request for 'first/second tier lower bunk housing' accommodations.  In
other words, Plaintiff claims that Defendants are not providing proper care for his
alleged disability. Plaintiff does not allege that Defendants discriminated against
him on the basis of his disability. Accordingly, Plaintiff fails to state a claim under
the ADA for which relief can be granted.").  As a result, the shoes basis for the
Claim I ADA claim is not cognizable.

For the reasons set forth above, the newly-added ADA claim fails to state a
claim upon which relief could be granted.  Amendment would not render it
cognizable and, thus, would be futile.

## B. Eighth Amendment Claim

"Deliberate indifference to the serious medical needs of an inmate is 'cruel
and unusual punishment' under the Eighth Amendment." *Rosati v. Igbinoso*, 791
F.3d 1037, 1039 (9th Cir. 2015) (*citing Estelle v. Gamble*, 429 U.S. 97, 104-06
(1976)).  To state and ultimately establish an Eighth Amendment violation requires
satisfying "both an objective standard – that the deprivation was serious enough to
constitute cruel and unusual punishment – and a subjective standard – deliberate
indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal
citation omitted).

A serious medical need "exists if failure to treat the injury or condition 'could
result in further significant injury' or cause 'the unnecessary and wanton infliction
of pain.'" *Colwell*, 763 F.3d at 1066 (internal citation omitted).  "Indications that a
plaintiff has a serious medical need include '[t]he existence of an injury that a
reasonable doctor or patient would find important and worthy of comment or

1   treatment; the presence of a medical condition that significantly affects an

2   individual's daily activities; or the existence of chronic and substantial pain.'" *Id.*

3   (internal citation omitted).

4       A prison official acts with deliberate indifference if he "knows of and

5   disregards an excessive risk to inmate health," *i.e.*, if the official is "aware of facts

6   from which the inference could be drawn that a substantial risk of serious harm

7   exists", and he also "draw[s] the inference." *Peralta v. Dillard*, 744 F.3d 1076,

8   1082, 1086 (9th Cir. 2014) (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

9   The "deliberate indifference" prong requires "(a) a purposeful act or failure to

10  respond to a prisoner's pain or possible medical need, and (b) harm caused by the

11  indifference." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081

12  (9th Cir. 2013) (internal citation omitted).

13      Such "[i]ndifference may appear when prison officials deny, delay or

14  intentionally interfere with medical treatment, or it may be shown in the way in

15  which prison [officials] provide medical care." *Lemire*, 726 F.3d at 1081 (internal

16  citation omitted).  However, "a complaint that a physician has been negligent in

17  diagnosing or treating a medical condition does not state a valid claim of medical

18  mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106.  "[T]he

19  indifference to [a prisoner's] medical needs must be substantial.  Mere

20  'indifference,' 'negligence,' or 'medical malpractice' will not support this [claim]."

21  *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (internal citation

22  omitted).  "Even gross negligence is insufficient[.]"  *Lemire*, 726 F.3d at 1082.  That

23  is because "[e]ven if a prison official *should* have been aware of the risk, if he 'was

24  not, then [he] has not violated the Eighth Amendment, no matter how severe the

25  risk.'"  *Peralta*, 744 F.3d at 1086 (internal citation omitted).

26      For purposes of Plaintiff's Claim I Eighth amendment claim, the SAC alleges

27  that on two occasions (in September and October 2019), two deputies – who,

28  significantly, are <u>not</u> Defendants – did not allow Plaintiff to join the pill line,

because in violation of jail policy, he was not fully dressed (instead of wearing pants, he had a blanket over his lap). As a result, Plaintiff did not receive unspecified medication on those two occasions. Whatever the propriety (or not) of those two deputies' acts, they do not and cannot rise to the level of an Eighth Amendment violation. Plaintiff does not allege that he suffered any adverse medical consequences as a result of not receiving access to medication on these two occasions. Moreover, this happened because Plaintiff was not following jail policy, and once he was on notice that his noncompliance would prevent him from joining the pill line, chose to again be noncompliant on the second occasion. Finally, the two deputies alleged to have violated the Eighth Amendment are not parties to this case. In short, there is no one to hold liable for this alleged Eighth Amendment violation even if it had been adequately alleged. Under these circumstances, the subjective and objective components of an Eighth Amendment claim, as well as the injury requirement, cannot be satisfied and this aspect of Claim I fails to state a claim upon which relief can be granted.

III.   **Claim II**

Claim II is based on a deprivation of access to courts theory. Plaintiff contends that various events have frustrated and impeded his pursuit of nonfrivolous claims brought protesting the conditions of his confinement. He complains that: his legal mail was delayed while he was at TTCF on many occasions; periodically, he was required to follow a lights out at midnight policy, was not permitted to work on his legal matters in a shared space on a 24/7 basis, and was threatened with discipline if he did not comply; when he was allowed law library access, he was required to work with one arm handcuffed to the wall, which rendered use of a "kiosk" inadequate; on one occasion, the library computers were down all night; and his pro per status was not maintained on a consistent basis.

Prisoners have a constitutional right of access to courts under the First and

Fourteenth Amendments.[6]  *See Lewis v. Casey,* 518 U.S. 343, 346 (1996); *Vandelft v. Moses,* 31 F.3d 794, 796 (9th Cir. 1994).  The right of access is guaranteed for direct and collateral attacks upon a conviction or sentence.  *See Lewis,* 518 U.S. at 354.  To state a claim for denial of access to courts, a plaintiff must allege a specific actual injury involving a non-frivolous direct appeal, habeas corpus proceeding, or civil rights action.  *See Lewis*, 518 U.S. at 351-352, 353 n. 3, 353-355; *see also Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999).  The right of access to courts also applies to prison grievance proceedings.  *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995).

When a prisoner alleges mail interference or other impeding matters, he must demonstrate actual injury, which means "actual prejudice," such as the inability to meet a filing deadline or to present a non-frivolous claim.  *Lewis,* 518 U.S. at 348-49, 352-53 & n.3; *Nevada Dept. of Corr. v. Greene,* 648 F.3d 1014, 1018 (9th Cir. 2011).  Actual injury is a jurisdictional requirement and may not be waived.  *Id.* (citing *Lewis,* 518 U.S. at 349); *see also, e.g., Jenkins v. McMickens,* 618 F. Supp. 1472, 1474-75 (S.D.N.Y. 1985) (complaint alleging certain documents pertaining to pending trial confiscated and not returned too conclusory to support claim of denial of access to court).

Claim II suffers from a fatal flaw that cannot be rectified with amendment, namely, the SAC's failure to allege a viable actual injury.  While Plaintiff complains of events that he believes negatively impacted his ability to engage in almost round-the-clock legal efforts, he does not allege that he actually was unable to pursue a

---

[6]      Claim II also alludes to the Due Process Clause, but this is not an appropriate basis for Plaintiff's access to courts claim.  "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994).  Claim II properly is raised under the First Amendment based on the facts alleged; Plaintiff has not properly stated a Fourteenth Amendment due process claim, because any such claim is indistinguishable from the First Amendment right to access the courts claim asserted through Claim II.

1    non-frivolous claim due to these alleged events.  At most, at the outset of Claim II,

2    Plaintiff complains that, due to the delayed receipt of some mail, he missed a single

3    court-imposed deadline in an unspecified lawsuit, which put him at risk of having

4    the suit dismissed.  Critically, however, Plaintiff he does not allege that the suit

5    actually was dismissed or that he actually suffered any adverse consequence in that

6    pending case.  This incident is wholly insufficient to satisfy the actual injury

7    requirement.  Throughout the rest of Claim II, Plaintiff complains only of being

8    inconvenienced about his desire to work on his legal matters after midnight and

9    difficult library conditions and a one-time computer glitch, but he does not identify a

10   single incident in which he suffered an actual injury incident for First Amendment

11   purposes as a result of the events he alleges.  Indeed, Plaintiff affirmatively pleads

12   just the opposite, namely, that he frequently (sometimes daily) filed grievances, as

13   well as a civil rights complaint.

14       The SAC also fails to satisfy the requirement that a plaintiff must allege that

15   the pleading he was unable to file, due to a defendant's conduct, would have been

16   nonfrivolous.  *Lewis*, 518 U.S. at 353.  This is required, because a prisoner's right of

17   access to the courts does not include the right to present frivolous claims.  *Id.* at 352

18   n.3 ("Depriving someone of an arguable (though not yet established) claim inflicts

19   actual injury because it deprives him of something of value. . . .  Depriving someone

20   of a frivolous claim, on the other hand, deprives him of nothing at all. . . .")  A

21   plaintiff must describe the arguments he would have made "well enough to apply

22   the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim

23   is more than hope."  *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).  While

24   Plaintiff alludes to pursuing a "non-frivolous claim," he proffers only this bare

25   conclusion; he does not identify any claim actually affected by any Defendant's

26   conduct and set forth any allegations to show it was non-frivolous.  More

27   importantly, he does not identify any non-frivolous claim he actually was unable to

28   pursue or was impeded from pursuing.

15

1    Claim II fails to state a claim upon which relief can be granted.  It suffers

2    from fatal defects that cannot be rectified with amendment.

3

4    IV.   **Claim III**

5    Claim III alleges that Plaintiff's Eighth Amendment rights were violated,

6    because he did not receive the provision of adequate "prison services" based on

7    various matters.  In July 2019, in response to one of Plaintiff's grievances,

8    Defendant Webb contacted him and advised that shoes with laces were not allowed

9    and that she needed to take his Nike shoes and place them in his stored property

10   items. Plaintiff complained that the shoes had been ordered by a doctor and were

11   medically necessary.  Webb responded that the ADA did require the jail to make an

12   exception if an item was physician ordered and advised Plaintiff that, if he provided

13   her with the relevant doctor order for the shoes, she would return the shoes to him.

14   Plaintiff alleges that in August 2019, a search was initiated by Defendant Deputy

15   Merino, the inmates were sent to the recreational yard, and when Plaintiff returned,

16   several unidentified items were missing.  On September 1, 2019, the ventilation was

17   not working and it was hot (over 80 degrees), and the water in the drinking fountain

18   was not cold.  Despite Plaintiff's grievances, the water in the drinking fountain

19   remained hot and the ventilator was not cleaned for some months.[7]

20   With respect to the shoe allegations against Defendant Webb, the Court has

21   noted above the relevant Eighth Amendment standards.  The SAC's allegations,

22   even if taken as true, cannot establish deliberate indifference on Webb's part.

23   Plaintiff describes her as essentially agreeing with him regarding his right to have

24   _____

25   [7]    Plaintiff also complains of various events that took place after he moved to MCJ in
November 2019.  The SAC, however, does not identify a single MCJ-related Defendant who could

26   be responsible for these matters.  Of the 15 named Defendants, only one – newly-added Deputy
Hinton – is alleged to have worked at MCJ.  However, the allegations of Claim III do not mention,

27   much less implicate, Defendant Hinton, who is alleged to have worked in the "legal unit."  As a
result, these MCJ-related allegations do not state a claim upon which relief can be granted and the

28   Court will not consider them.

1    his Nikes if he could demonstrate that they had been doctor-ordered and agreeing to

2    return them to him if he provided her with the doctor's order.  Nothing about that

3    interaction bespeaks of the type of mindset that could establish deliberate

4    indifference.

5    　　　With respect to the search initiated by Defendant Merino, Plaintiff fails to

6    identify the "several items" that were discovered to be missing.  Without that, there

7    cannot be any basis for believing that the Eighth Amendment is implicated based on

8    this search.  In any event, Plaintiff's allegations in this respect cannot state a viable

9    Section 1983 claim.  When a prisoner alleges he was deprived of property by the

10   unauthorized act of a state official, either negligent or intentional, he cannot state a

11   constitutional claim where the state provides an adequate post-deprivation remedy.

12   *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that the unauthorized

13   negligent or intentional deprivation of property does not violate due process if a

14   meaningful post-deprivation remedy is available); *see also Stewart v. Woodley*, 137

15   Fed. Appx. 938 (9th Cir. 2005) (finding that prison officials' failure to return

16   property did not violate due process).  The California Tort Claims Act ("CTCA")

17   provides an adequate post-deprivation state remedy for the random and unauthorized

18   taking of property.  *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994).  Thus,

19   the SAC's allegations regarding the August 2019 search cannot state a viable Eighth

20   Amendment-based Section 1983 claim.[8]

21

22   _____

     [8]     Plaintiff also alludes to an earlier search in which Deputy Franks required Plaintiff and

23   others to stand against the wall and be searched, even though some of them had physical
     disabilities.  Plaintiff alleges that he filed a grievance and subsequently was told that the policy

24   had changed as a result of his grievance, and as a result, that no further similar searches occurred.
     These allegations do not state an Eighth Amendment claim, as Claim III rests on the asserted

25   deprivation of "prison services," not excessive force.  But even if the Court liberally construes
     Claim III to include a new excessive force claim for which leave had not been sought or granted,

26   these allegations are inadequate to plead a viable claim of this nature, as there is no allegation
     from which it can be inferred that force was used in the search and that it was done "maliciously

27   and sadistically for the very purpose of causing harm."  *Whitley v. Albers*, 475 U.S. 312, 320-21
     (1986).

28

17

Finally, it is possible that allegations of excessive heat, a dirty ventilator, and inadequate drinking water could serve as a basis for an Eighth Amendment-based claim if adequate allegations are made.  A prisoner may state a Section 1983 claim under the Eighth Amendment against prison officials if they acted with "deliberate indifference" to the threat of serious harm or injury to an inmate by physical conditions at the prison.  *See Frost v. Agnos,* 152 F.3d 1124, 1128–29 (9th Cir. 1998).  The failure of prison officials to protect inmates from dangerous conditions at the prison violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is objectively, sufficiently serious; and (2) the prison official is subjectively, deliberately indifferent to inmate safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040–41 (9th Cir. 2005).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation.  *See, e.g., Hearns*, 413 F.3d at 1041-42 (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions).  With regard to the subjective component of the analysis, a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.  *See Farmer*, 511 U.S. at 837.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Id.*

Plaintiff's allegations in this respect are cursory at best.  He alleges that on one particular day in September 2019, it was over 80 degrees, the ventilation was

1    not working, and inmates did not have access to cold drinking water.  He alludes

2    vaguely to having filed numerous grievances and that the drinking fountain water

3    nonetheless remained hot and the ventilator remained uncleaned despite assurances

4    from the "LASD" that these problems would be corrected.  The Court concludes that

5    although these allegations are troubling, they are not adequate to give rise to a viable

6    Eighth Amendment claim.  A single day in which the temperature was over 80

7    degrees and ongoing warm fountain drinking water were unpleasant circumstances

8    but do not indicate a deprivation that is sufficiently serious to constitute cruel and

9    unusual punishment. And while Plaintiff complains that a ventilator was "filthy," he

10   does not allege that air quality was poor or dangerous as a result.

11       In addition, and critically, the SAC names a number of individual Defendants

12   in their individual capacities.  To state viable claims against them requires that

13   Plaintiff allege facts linking each Defendant's action or omission to a violation of

14   his rights.  *See e.g., Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *Lemire*

15   *v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074-1075 (9th Cir. 2013);

16   *Lacey v. Maricopa County*, 693 F.3d 896, 915-916 (9th Cir. 2012) (en banc).

17   Plaintiff does not identify a single one of the named Defendants who had anything

18   to do with the ventilation, heat, and water matters of which he complains.  Put

19   otherwise, there is no Defendant named against whom this claim could proceed even

20   if it had adequately alleged an Eighth Amendment violation committed by someone.

21       It is significant to note that, in the December 10 Order, the Court took pains to

22   make clear to Plaintiff that he cannot simply list Defendants and expect a federal

23   court to look at matters appended to the complaint and attempt to construct claims

24   against each of them.  Similarly here, Plaintiff again has listed numerous

25   Defendants, on the one hand, and has set forth lengthy rambling allegations of the

26   wrongs he claims to have experienced while at TTCF and/or MCJ, on the other, but

27   he fails to link the two.  It is not enough to make a list of people you would like to

28   hold liable and then make a list of things that happened to you, without indicating

1   who did what or failed to do what.  The Court cannot supply those critical missing

2   facts.  Plaintiff, through the SAC, has disregarded the direction set forth in the

3   December 10 Order (quoted above) that for each claim he must state "together in

4   one paragraph, the Defendants against whom the particular claim is brought; and . . .

5   the factual allegations—Defendant by Defendant—that support the particular claim

6   against each particular Defendant."

7       Accordingly, Claim III fails to state a claim upon which relief could be

8   granted.

9

10  V.    **Claim IV**

11      Claim IV is brought under the Eighth Amendment and rests on asserted

12  delayed and denied medical treatment.  Plaintiff alleges that when he was

13  transferred to TTCF at the end of April 2019, he "told medical" that he earlier had

14  been scheduled for medically necessary corrective surgery.  When Plaintiff "spoke

15  with mental health," he was told he would not be given his previously-prescribed

16  Lexapro until he was evaluated by the facility psychiatrist to determine if the

17  medication was necessary.  In May 2019, a state court judge wrote various orders

18  directing that Plaintiff be seen by an outside orthopedic surgeon and evaluated for

19  his medication.  On June 5, 2019, Plaintiff was seen by a psychiatrist, who

20  prescribed medication other than Lexapro, which had "miserable side effects."  On

21  June 6, 2019, Plaintiff saw an unidentified nurse about his back pain resulting from

22  the laces in his orthopedic shoes having been removed, but no treatment was

23  provided.  On July 5, 2019, Plaintiff was told he could obtain free alternate shoes

24  from the Commissary, but those shoes were not suitable and were not free.  On July

25  6, 2019, as described earlier, Defendant Webb took Plaintiff's orthopedic Nikes and

26  offered him Crocs shoes as a replacement, which Plaintiff believed were not

27  suitable.  On August 2, 2019, Plaintiff was called to Clinic for an x-ray, but he told

28  them his injury requires a CAT-scan.  On September 30, 2019, Plaintiff was told

1   that he had an orthopedic evaluation scheduled for November, but by then, his leg

2   had deteriorated.[9]

3         Earlier, the Court noted the applicable standards for stating an Eighth

4   Amendment claim based on denied or delayed medical treatment.  Plaintiff has

5   alleged medical treatment that was delayed, *viz.*, his psychotropic medication and an

6   orthopedic evaluation related to his shoes and possible surgery.  Claim IV, however,

7   suffers from a fundamental defect that is the same as that inherent in Claim III,

8   namely, a failure to identify any Defendant who can be said to have purposefully

9   acted or failed to act in response to Plaintiff's medical needs.  The Claim alleges

10  only generalities, *i.e.*,, that Plaintiff spoke to "medical" or to "mental health" or a

11  nurse, but the only Defendants named have nothing to do with medical care or

12  treatment.  With one exception, none of the named Defendants are alleged to have

13  been involved with, much less to have responsibility for, the delay in Plaintiff's

14  receipt of his psychotropic medication and orthopedic evaluation.  The sole

15  exception is Defendant Webb, who as discussed earlier, is alleged to have taken

16  Plaintiff's Nikes pursuant to jail policy but to have agreed with him that he could

17  receive them back if he provided a doctor's order for them and to have offered him a

18  shoe alternative.  As previously concluded, her behavior cannot be found to meet the

19  deliberate indifference requirement.

20        Claim IV necessarily fails because it is nothing more than a list of events that

21  have aggrieved Plaintiff untethered to any Defendant in this case.  Again, Plaintiff

22  has entirely disregarded the December 10 Order's directive that he identify the

23  particular Defendants sued in connection with each claim and set forth within each

24  claim the factual allegations that support their liability in connection with that

25  _____

26  [9]      Plaintiff also alleges various things that happened after he was transferred from TTCF to
    MCJ, including that he refused to allow an x-ray to be taken when he was sent for his outside

27  orthopedic evaluation and fitting of orthopedic shoes, because he believed it was unnecessary.  As
    before, given the lack of any Defendant who could be responsible for these matters, no viable

28  claim is stated based upon them.

particular claim.  Claim IV is simply a list of grievances with no basis for finding any actual Defendant liable for them.  As a result, Claim IV fails to state a claim upon which relief can be granted.

\*     \*     \*     \*     \*

As discussed above, the Court has concluded that the SAC fails to state any claim upon which relief can be granted against the Defendants.  Plaintiff has been given multiple opportunities to attempt to state a cognizable claim, following clear and express directions from this Court.  He has failed to do so and has disregarded prior Court Orders in significant respects.  Plaintiff's continued inability to state cognizable claims against proper Defendants demonstrates that he cannot rectify these defects, and thus, further amendment would be futile. The Court therefore recommends that the request to proceed without prepayment of the filing fee be DENIED, without leave to amend, and that this case be dismissed.